```
                IN THE UNITED STATES DISTRICT COURT
               FOR THE WESTERN DISTRICT OF TENNESSEE
                          WESTERN DIVISION
```
_____

MARY MARTIN, an individual on        )
behalf of herself and others         )
similarly situated,                  )
                                     )
            Plaintiffs,              )   No. 10-2532-STA-dkv
                                     )
vs.                                  )
                                     )
PSALMS, INC.,                        )
                                     )
            Defendant.               )
_____

REPORT AND RECOMMENDATION ON PLAINTIFF'S EXPEDITED MOTION FOR
APPROVAL OF 29 U.S.C. § 216(b) NOTICE AND CONSENT FORMS AND TO
      ORDER DISCLOSURE OF CURRENT AND FORMER EMPLOYEES
_____

Before the court is the January 17, 2011 expedited motion of the plaintiffs, Mary Martin ("Martin"), an individual on behalf of herself and others similarly situated, to allow this case to proceed as a collective action, for approval of notice and consent forms pursuant to 29 U.S.C. § 216(b), to order the defendants to disclose the names of their current and former employees, to toll the statute of limitations for putative class members, and other relief.[1] The defendant, Psalms, Inc. ("Psalms"), has filed a timely response in opposition of the motion.[2] The motion was referred to the United States Magistrate Judge for a report and

---

[1] Martin has also requested that consent forms be deemed "filed" on the date postmarked and that Psalms be required to post a notice.

[2] Psalms' opposition does not address all the relief sought.

recommendation. For the reasons set forth below, the court recommends that this case be conditionally certified as a collective action.

I. FACTUAL AND PROCEDURAL BACKGROUND

On July 21, 2010, Martin filed a complaint on behalf of herself and those similarly situated against Psalms. (D.E. 1.) In the complaint, Martin alleges that Psalms violated the Fair Labor Standards Act ("FLSA") by not compensating her and other members of the purported class for working during unpaid meal breaks. (Id. ¶ 1.)

Psalms, doing business as Kirby Pines, is a retirement community located in Memphis, Tennessee offering independent-living apartments and garden homes, assisted-living areas, a nursing home, and an Alzheimer's residence. (D.E. 16-1, Richmond Aff. ¶ 3.) Martin was employed by Psalms as an hourly non-exempt certified nursing assistant. (*Id.* ¶ 13.)

According to Martin, Psalms violated the FLSA by subjecting employees to a common policy that deducted a 30-minute meal period per shift, regardless of whether or not the employees had the opportunity to take a break. (Pl.'s Mot., D.E. 12-1 at 3.) Martin contends that it was "extremely common for hourly employees to perform compensable work during their uncompensated work breaks" because Psalms never explained to the employees what constituted a compensable meal break under the FLSA, and the work load and

2

staffing situation did not allow for daily meal breaks. (*Id.* at 3-4.)  Martin further alleges that Psalms expected employees to be available to work throughout their shifts and was on notice that employees worked unpaid. (*Id.*)  Martin avers that "[g]iven the demands of the health care industry and staffing shortages," Psalms knew that their employees would have to work through their unpaid breaks in order to complete their assignments. (Compl. ¶ 21.)

Psalms concedes that it uses a time clock to record time for all hourly non-exempt employees and that its time system deducts a 30 minute meal break. (D.E. 16-1, Richmond Aff. ¶ 8-9.)  Psalms states that it has a policy which specifically provides employees with meal breaks according to state law. (*Id.*)  Pursuant to the policy, if non-exempt employees worked during their meal period, they will be given a rescheduled meal period or paid for time worked. (*Id.*)

On January 17, 2011, Martin filed the instant motion seeking the court to: (1) certify this case as a collective action under the FLSA and unjust enrichment under Tennessee Law; (2) direct Psalms to provide a list of names, last known address, and last known telephone numbers for all hourly employees of Psalms that were subject to the meal break deduction policy within the last six years; (3) direct Psalms to give notice to future employees by posting notice at work, enclosing it with their paycheck, and mailing notice to employees; (4) toll the statute of limitations

for the putative class as of the date this action was filed; and (5) order that the opt in plaintiff's consent forms be deemed filed on the date they are postmarked.  In support of the motion, Martin filed her affidavit, along with the affidavits of two former employees of Psalms, Pamela Vann ("Vann") and Sylvia Williams ("Williams").  (D.E. 12-4, Vann Aff. & Williams Aff.)  Vann was a licensed practical nurse that has opted into this action.  (Def.'s Resp., D.E. 16 at 4.)  Williams was initally hired as a certified nursing assistant and was promoted to activities director, but has not opted into this action.  (*Id.*)  Both Vann and Martin contend that they were denied compensation for working during meal periods.  (*Id.*)  Williams states that she regularly interacted with the nursing staff, and, based on her observations, the nursing staff was regularly required to perform compensable work during unpaid meal breaks.  (*Id.*)  Martin, Vann, and Williams all aver that Psalms knew employees worked during their meal breaks, but continued to deduct thirty minute meal periods.  (*Id.*)

## II.   ANALYSIS

A.   <u>FLSA Certification Standard</u>

Under the FLSA, employees can sue their employers on their own behalf and for "similarly situated" persons.  *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006).  Specifically, Section 216(b) of the FLSA states:

> Any employer who violates [the minimum wage and maximum hours provisions] of this title shall be liable to the

>employee or employees affected.  An action to recover [for such liability] may be maintained . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.  No employee shall be a party plaintiff to any such action unless he gives consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).  Thus, employees wishing to join representative actions must both be similarly situated to the plaintiff maintaining the action and must give written consent to become a party.  29 U.S.C. § 216(b) (2006); *Comer*, 454 F.3d at 546.  Suits brought pursuant to Section 216(b) are termed "collective actions" and are different from "class actions" in that similarly situated plaintiffs may "opt into" the suit rather than "opt out" as required by Rule 23 of the Federal Rules of Civil Procedure.  *Id.*

Plaintiffs bear the burden to show that they are "similarly situated" to the remainder of the proposed class.  *Id.*; *Morisky v. Public Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 496 (D.N.J. 2000).  To warrant a court's authorization of notice to prospective co-plaintiffs, named plaintiffs need only demonstrate that they are "similarly situated to the other employees [they] seek to notify of the pendency of the action."  *O'Brien v. Ed Donnelly Enters.*, 575 F.3d 567, 584 (6th Cir. 2009).  In *O'Brien*, the Sixth Circuit clarified that the term "similarly situated" does not require a showing that the plaintiffs all suffered from a 'unified policy' of violations.  *Id.* at 584.  Rather, the court stated that plaintiffs need only show that their claims are "unified by common theories of

5

defendant's statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *Id.* at 585.

Courts commonly apply a two-phase process to determine whether potential co-plaintiffs are qualified under Section 216(b). *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213 (5th Cir. 1995)(*overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003)); *see also Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997) (and cases cited therein); *Morisky*, 111 F. Supp. 2d at 496. The first phase occurs early in the discovery process, when courts determine whether to "conditionally" certify the proposed class. *Comer*, 454 F.3d 544, 546. In the first stage, courts are primarily concerned with whether potential co-plaintiffs should be given notice of the action. *Mooney*, 54 F.3d at 1213-14; *Morisky*, 111 F. Supp. 2d at 497. The Sixth Circuit applies a "fairly lenient" standard, allowing plaintiffs to prove that they are similarly situated by making only a "modest factual showing." *Comer*, 545 F.3d at 547. Courts typically determine whether notice is warranted based solely on pleadings and any affidavits which have been submitted. *Mooney*, 54 F.3d at 1213-14; *Brooks v. Bellsouth Telecomm., Inc.*, 164 F.R.D. 561, 568 (N.D. Ala. 1995.). In the second stage, which occurs after "all of the opt-in forms have been received and discovery has concluded," courts use a more rigorous standard to determine whether the named plaintiffs are similarly situated. *Comer*, 454 F.3d at 546.

The practice of bifurcating the certification process is due at least in part to the time constraints placed on potential "opt in" plaintiffs in FLSA collective actions. Plaintiffs seeking to recover unpaid compensation under the FLSA's provisions must commence their suits "within two years after the cause of action accrued." *Hughes v. Region VII Area Agency on Aging*, 542 F.3d 169, 187 (6th Cir. 2008); 29 U.S.C. 255(a). The statute extends the applicable filing period to three years upon a finding that the employer's violation was "willful." *Id.* In the case of a collective action, an action is "commenced" on the date on which an individual files with the court his or her written consent to become a party plaintiff. *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1106 (11th Cir. 1996); 29 U.S.C. § 256(b). Therefore, the filing of a representative action does not toll the statute of limitations as to "opt-in" plaintiffs who later join the action. *Woodard v. FedEx Freight E., Inc.*, 250 F.R.D. 178, 194 (M.D. Pa. 2008); *Hasken v. City of Louisville*, 234 F. Supp. 2d 688, 691 (W.D. Ky. 2002).

B.  <u>Similarly Situated Analysis</u>

In the instant motion, Martin argues that the court should authorize this case as a collective action "on behalf of non-exempt employees of [Psalms] during the last six years who were subject to [Psalm's] practice of automatically deducting employees' meal breaks." In opposition, Psalms makes several arguments to demonstrate that certification is inappropriate. Psalms argues

that Martins cannot establish that all hourly non-exempt employees are similarly situated with respect to her claim for alleged unpaid time for working during meal periods. Psalms also argues that Martin cannot demonstrate that she and potential plaintiffs together were victims of a common policy or plan that violates the FLSA or that they were not paid for every minute of compensable time. Further, Psalms contends that its auto-deduction policy does not violate the FLSA because it provides that in the event an hourly employee performs compensable work during a meal break, the employee should report it to the supervisor so that he or she receives pay or a rescheduled meal period.

In evaluating whether the proposed class members will be similarly situated to each other, the Sixth Circuit held in *O'Brien* that if the initial plaintiffs have articulated a "common means by which they were allegedly cheated," the court should not allow the fact that each plaintiff has "individualized and distinct" proof of the statutory violation to dissuade the court from authorizing certification. *O'Brien*, 575 F.3d at 585. Therefore, contrary to Psalms' argument, a unified policy of violations is not required to support certification. Additionally, Psalms' argument that Martin cannot establish that all hourly non-exempt employees are "similarly situated" because there are "nineteen (19) different job positions held by the 288 hourly non-exempt" employees also fails. Plaintiffs need only show that their positions are "similar, not

8

identical, to the positions held by the putative class members." *Comer*, 454 F.3d at 546-47 (citations omitted). The fact that all hourly, non-exempt employees held different job titles and duties is irrelevant at this stage in the certification process. It is relevant, however, to consider whether the employees were subject to Psalms' meal deduction policy but continued to work uncompensated.

Here, Martin and Vann allege a common theory by which they were "cheated" — the denial of wages resulting from Psalms failure to relieve them of their duties during their uncompensated meal breaks. In several analogous cases, courts have found that this common theory was sufficient proof that the plaintiff and the putative plaintiffs were similarly situated. *See Carter v. Jackson-Madison County Hospital District*, 2011 WL 1256625 (W.D. Tenn. March 31, 2011)(finding that the plaintiff's proof that she and two other employees had their pay reduced for meal breaks was sufficient to conditionally certify the class and issue court-supervised notice); *Lindberg v. UHS of Lakeside, LLC*, 2011 WL 204832 (W.D. Tenn. Jan. 21, 2011)("At this stage in the litigation, evidence of [the defendant's] common practice [of automatic-deduction] is enough to warrant conditional certification and notice to all non-exempt employees of Lakeside, UHS, or both."); *Kimbell v. Dynamic Strategy*, 2009 WL 1651431 (M.D. Tenn. June 12, 2009).

In *Kimbell*, a case involving a similar automatic-deduction policy, the district court granted conditional certification after finding that the plaintiffs and putative plaintiffs were similarly situated. 2009 WL 1651431, at *5. The plaintiffs submitted affidavits from former employees which indicated that although defendant had a written policy in place to ensure that time records were edited to reflect missed meal periods, the policy was ignored on numerous occasions. *Id.* The *Kimbell* court concluded that this proof satisfied the "modest factual showing" needed to determine that the plaintiff was similarly situated to other hourly employees. *Id.*

The court finds these cases instructive and that class certification is appropriate where, as here, the plaintiffs have made a modest showing that defendants had an auto-deduction policy and that employees continued to work during meal breaks without being compensated with the defendant's knowledge. This case is in the first stage of the certification process. In light of the "fairly lenient standard" applied during this phase, the court finds that the common theory alleged by Martin and Vann is sufficient evidence that Martin and the proposed class members are "similarly situated." As such, it is recommended that this case be conditionally certified as a collective action.

C.  <u>Interest in Certification</u>

Along with arguing that all hourly, non-exempt employees are not similarly situated, Psalms argues that there is insufficient interest that other employees will opt into this action to justify certification.  Psalms contends that a collective action in this case would be unmanageable, and "plaintiffs should not be permitted to request court-supervised notice as a tool for drumming up business."  In response, Martin states that the Sixth Circuit has never accepted this argument and that the argument usually appears at the decertification stage.

In *Frye v. Baptist Memorial Hospital*, a court from this district noted that although the Sixth Circuit has not articulated whether there needs to be a showing that other employees are interested in opting in, the Eleventh Circuit has noted that this is a question the court should consider.  2008 WL 6653632, at *6 (W.D. Tenn. Sept. 16, 2008)(quoting *Dybach v. Fla. Dep't of Corr.*, 942 F.2d 1562, 1567 (11th Cir. 1991)).  However, the *Frye* court concluded that no minimum number of opt-in plaintiffs are required because the issue is simply whether other employees are interested. (*Id.*)  Here, Martin has shown that at least one other former employee, Vann, has opted into this action.  As such, the court recommends that under the lenient standard applicable at this first stage, this is sufficient interest to conditionally certify a collective action and permit court-supervised notice.

11

D. <u>State Law Claims of Unjust Enrichment</u>

Along with seeking certification of her FLSA claims, Martin seeks certification of her state law claims of unjust enrichment. Martin contends that an unjust enrichment claim will allow her and prospective class members to recover for meal break work performed during weeks in which the employees did not work a total of forty hours. In response, Psalms argues that certification of Martin's state law claim of unjust enrichment is inappropriate because Martin has failed to establish that she and the other putative class members are similarly situated or that unjust enrichment is appropriate for collective treatment.

In *O'Brien*, the Sixth Circuit held that plaintiffs can have both state and FLSA claims certified as a collective action. *O'Brien*, 575 F.3d 567, 580. The Sixth Circuit explained:

> If the opt-in plaintiffs are similarly situated to the lead plaintiffs, it does not make sense to suggest, as defendants seem to, that only the FLSA claims may proceed collectively, while the supplemental claims would have to proceed individually or would be required to run parallel to the collective action only by satisfying the more stringent requirements of Fed. R. Civ. P. 23. To disjoin FLSA and supplemental claims in the manner proposed by defendants would defeat the purpose of supplemental jurisdiction, which is to facilitate the resolution of claims that are so closely related to claims for which federal jurisdiction originally lies that the supplemental claims are part of the same case or controversy as the claim independently invoking federal jurisdiction.

575 F.3d 567, 580. Therefore, because the court has already found that Martin and the proposed class members are similarly situated,

the court finds that certification for the unjust enrichment claims is appropriate.

### III.   CONCLUSION

For the foregoing reasons, the court recommends that the plaintiffs' motion for conditional certification be granted and that court authorized notice be given.  If the court adopts the report and recommendation and conditionally certifies the collective action, it is recommended that the parties be ordered to meet and confer to draft a mutually agreeable notice.  It is further recommended that if the court adopts the report and recommendation and conditionally certifies the collective action, Psalms be directed to provide to Martin a list of names and last known addresses and telephone numbers of the covered employees.  Finally, it is recommended that Psalms be given an opportunity to further respond to the additional requested relief.

Respectfully submitted this 3rd day of May, 2011.

                                       s/ Diane K. Vescovo
                                       DIANE K. VESCOVO
                                       UNITED STATES MAGISTRATE JUDGE